## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EPC REAL ESTATE GROUP, LLC,      )<br>                                                            )<br>           **Plaintiff,**                         )<br>                                                            )<br>v.                                                          )<br>                                                            )<br>YATES & YATES, LLC,                        )<br>    Serve at:                                         )<br>    United States Corporation Agents  )<br>    1028 N. Kingshighway St.              )<br>    Cape Girardeau, MO 63701          )<br>                                                            )<br>and                                                      )<br>                                                            )<br>DENISE YATES,                                 )<br>    Serve at:                                         )<br>    8950 N. Montgall Ave. #207         )<br>    Kansas City, MO 64156                )<br>           **Defendants.**                      )  | Case No. _____ |

### **VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

COMES NOW Plaintiff, EPC Real Estate Group, LLC, by and through the undersigned counsel and for its Verified Complaint against the Defendants, Yates & Yates, LLC and Denise Yates (collectively, "Defendants"), states and alleges as follows:

### **PARTIES AND JURISDICTION**

1. EPC Real Estate Group, LLC ("EPC") is a Kansas corporation registered to conduct business in Kansas with its principal place of business in Overland Park, Kansas.

2. Defendant Yates & Yates, LLC ("Yates & Yates") is a limited liability company organized under the laws of the state of Missouri, with its principal place of business located at 8950 N. Montgall Ave. #207, Kansas City, Missouri 64156.

3. Defendant Denise Yates ("Yates") is an individual who, upon information and belief, currently resides at 8950 N. Montgall Ave. #207, Kansas City, Missouri 64156.

4. Personal jurisdiction is proper in this Court because EPC has its principal place of business in Kansas and because Defendants engaged in unlawful conduct in Kansas which has caused harm to EPC.

5. The Court has subject matter jurisdiction over EPC's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over EPC's state law causes of action under 28 U.S.C. § 1367.

6. This court also has jurisdiction over this action under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy is more than $75,000.

7. Venue is proper in this Court because Defendants regularly conduct substantial business activities in Kansas and because EPC's various causes of action arose, in whole or in part, in Kansas.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

A. **BACKGROUND**

**Business of EPC**

8. EPC specializes in producing luxury apartments in urban or high-density locations, including sourcing locations for new properties and assembling a team of architects, engineers and consultants to obtain the necessary approvals and permits necessary to commence construction. EPC also supervises construction of its properties and then implements leasing and marketing programs to achieve occupancy goals and maximize returns for its investors.

9. EPC is headquartered at 8001 Metcalf Avenue, Suite 300 in Overland Park, Kansas 66204.

10. EPC has spent substantial time, expense, and effort in developing its services and products, including proforma tools, which consist of proprietary information relating to market rent, rent margins, pricing, operations, requirements, programs, processes, as well as contacts within customers' organizations. All of this constitutes EPC's protected intellectual property (including trade secret information) that is unavailable to EPC's competitors and provides it with a competitive advantage in the luxury apartment industry.

11. EPC has also spent significant time and expense developing goodwill and beneficial relationships with its customers.

12. EPC rigorously maintains the confidentiality of its business information because the information provides EPC with a competitive advantage in the marketplace from which EPC derives economic value.

13. A competitor could use EPC's information to unfairly price its services, move business and longstanding client relationships away from EPC, and obtain an unfair advantage in its development of products and services.

14. EPC utilizes a secure cloud-based system (Datto Workplace) to store and maintain much of its confidential, proprietary and trade secret information.

15. EPC strictly limits access to its secure systems, including Datto Workplace, to its employees with a need to know the information accessed.

16. EPC takes a number of steps to ensure that its employees protect the information on the EPC computer system (including EPC's trade secrets and confidential information) and that its employees do not use or disclose that information. Those steps include: (a) handbook and Information Technology ("IT") policies; (b) physical security to protect against the disclosure of sensitive materials to third parties or EPC employees who do not have a business need to access

the materials; and (c) IT security measures, such as password protection for all computers and segregation of certain files so that only employees with a need to access the files can do so.

17. EPC also maintains policies to protect its confidential information, which further describe the Company's computer security requirements and prohibit unauthorized use of EPC information and systems for personal gain or in competition with EPC.

18. To protect its interests in confidential information and customer relationships, EPC requires all employees to execute a confidentiality and non-compete agreement, which prohibits, among other items, the disclosure of EPC's confidential information.

**Denise Yates**

19. Yates was employed by, and/or provided services to, EPC in various roles from 2004 to her separation on April 14, 2021. During her tenure, Yates served in several different roles including Vice President of Operations and Development, Financial Analyst, and Asset Manager.

20. Yates, as a tenured employee of EPC, had access to confidential company information including, but not limited to, confidential and trade secret information pertaining to EPC's customers, residents of properties developed by EPC, schematics of EPC properties, margins, financial history, customer contact information, product and service costs, personnel information, and other confidential business and financial information.

21. To protect its interests in confidential information and customer relationships, on or about May 28, 2013, contemporaneous with a significant change in her employment status, EPC required that Yates execute an Employee Confidentiality Agreement ("Confidentiality Agreement"). A true and accurate copy of the Confidentiality Agreement is Attached hereto as **Exhibit A**.

22. The Confidentiality Agreement contains the following prohibition on the disclosure and use of EPC's confidential information:

> "Employee agrees that any and all knowledge or information that may be obtained in the course of the employment with respect to the conduct and details of the business and with respect to the processes, formulas, etc. used by the employer in the operations of the business will be forever held inviolate and be concealed from any competitor and all other persons . . .and that he or she will not impart the knowledge acquired to anybody . . .."

Exhibit A, Paragraph 1.

23. The Confidentiality Agreement contains the following prohibition on engaging in business activities in competition with EPC:

> "Employee agrees . . . that he or she will not engage as employer, employee, principal, agent, or otherwise, directly or indirectly, at any time in a similar business, . . . and that should he or she at any time leave the employ of the employer he or she agrees not to enter into the employ or service or otherwise act in aid of the business of any rival company or concern or individual engaged in the same or in similar lines of business."

Exhibit A, Paragraph 1.

24. The Confidentiality Agreement expressly provides that the non-competition obligations apply only if Yates engages in an occupation "in which the processes, formulas, and other secrets of [EPC]" are directly or indirectly involved. Exhibit A, Paragraph 3

25. The Confidentiality Agreement also contains the following available remedies for Yates' violation of the Agreement:

> "If he or she does so in violation the employer shall be entitled to an injunction by any competent court of equity enjoining and restraining him [her] and each and every other person concerned from continuance of employment, services or other acts in aid of the business of the rival company or concern."

Exhibit A, Paragraph 2.

26. On April 14, 2021, EPC terminated Yates' employment with EPC, effective immediately.

27. On that same day, EPC disabled Yates' access to Datto Workplace and sent Yates correspondence to her EPC email account instructing her to return her laptop, company credit card, and keys, by the end of the day, April 16, 2021.

28. After receiving news of the termination of her employment, Yates unlawfully forwarded several emails, including several emails attaching documents containing EPC's confidential, proprietary and trade secret information, from her EPC email account to her private email address.

29. The confidential and trade secret information that was attached to the emails Yates forwarded included internal proforma documents, corporate marketing strategy documents, proprietary financial tools, financial summaries and income statements, balance sheets and profit and loss reports.

30. On April 15, 2021, upon discovering Yates had forwarded EPC's confidential, proprietary and trade secret information to her personal email address, EPC immediately discontinued Yates' access to her EPC email account.

31. From April 14 through April 22, 2021, Yates ignored EPC's attempts to retrieve its property from Yates.

32. On Friday, April 23, 2021, Yates finally responded to EPC that she was out of town and would return her property on April 26, 2021.

33. Also on April 23, 2021, EPC, through its counsel, sent Yates a letter ("Cease and Desist Letter") by overnight delivery informing Yates that EPC was aware she had forwarded numerous documents from her EPC email to her personal email, that the information contained within those emails were confidential trade secrets, and that she did not have authority to

misappropriate that information. A true and correct copy of the Cease and Desist Letter is attached hereto as **Exhibit B.**

34. The Cease and Desist Letter directed Yates to immediately return to EPC all paper copies and electronic materials taken by her and, upon return, to delete any and all copies or files of EPC in Yates' possession. EPC further demanded Yates return all computers, laptops, iPads, and cellphones to EPC by the end of the next business day, Monday, April 26, 2021.

35. On April 27, 2021, Yates emailed EPC Vice President Brendon O'Leary stating she would return the property to EPC that same day. Yates failed to return the property as promised.

36. Upon information and belief, in an apparent attempt to hide her unlawful conduct of misappropriating EPC's confidential information and trade secrets, Yates took her EPC issued laptop to a Best Buy retail store located at 9130 N. Skyview Avenue in Kansas City, Missouri and had the hard drives of her laptop and desktop devices wiped of all electronically stored information.

37. Following additional correspondence between EPC and Yates, Yates finally returned her wiped laptop and other EPC property to EPC on or around April 30, 2021.

**Formation of Yates & Yates, LLC**

38. Unbeknownst to EPC, on October 8, 2018, Yates formed Yates & Yates LLC ("Yates & Yates) as a limited liability company under the laws of the State of Missouri.

39. Upon information and belief, Yates established Yates & Yates to engage in providing business services in direct competition with EPC.

40. Upon information and belief, Yates is currently employed by, and has an ownership interest in, Yates & Yates.

41. On April 23, 2021, EPC discovered that Yates was sending "Company Profile 2021" marketing brochures for Yates & Yates ("Brochure") to current clients of EPC. The Brochure states in relevant part:

> "We are an experience-focused management company and consulting firm that exists to exceed expectations in the multi-family industry. Through our passion and expertise in management, development, marketing & design we are committed to offering extraordinary experiences that are proven to provide positive results. We strive to cultivate meaningful relationships with a sincere commitment to fulfill the needs of each and every partnership."

A true and accurate copy of the Brochure is attached hereto as **Exhibit C**.

42. The Brochure demonstrates that Yates & Yates is a direct competitor of EPC.

43. The Brochure contains several of EPC's professional photography images of EPC properties which Yates & Yates misrepresented as its own properties and lists several of EPC's current clients as Yates & Yates's clients, all of which is false and misleading.

44. Upon information and belief, Yates, through Yates & Yates's Brochure, intended to damage EPC's relationships with its customers for Yates & Yates's competitive purposes.

45. Yates has used and/or disclosed EPC's confidential, proprietary and trade secret information that she acquired from EPC by improper means, in an attempt to gain a competitive advantage over EPC.

46. Yates' course of conduct, through and on behalf of Yates & Yates, violates the confidentiality and non-competition restrictions of the Confidentiality Agreement and violates state and federal law.

47. Yates' unlawful conduct has already caused, and has potential to cause, tremendous damage to EPC. EPC seeks injunctive relief and appropriate monetary damages against Yates, in her individual capacity, and Yates & Yates.

## COUNT I
### PRELIMINARY AND PERMANENT INJUNCTION
**(All Defendants)**

48. EPC restates and realleges the preceding paragraphs herein.

49. Yates was an employee of EPC and, in her capacity as an employee, had access to certain confidential, proprietary and trade secret information of EPC.

50. Following EPC's notification to Yates of its termination of Yates' employment, Yates accessed and forwarded to her personal email address numerous individual files containing the confidential, proprietary and trade secret information of EPC.

51. Upon information and belief, Yates transferred additional confidential, proprietary, and trade secret information from her EPC devices prior to returning it to EPC.

52. Upon information and belief, Yates is currently employed by, and has an ownership interest in, Yates & Yates, a direct competitor of EPC.

53. Defendants are in possession of confidential, proprietary and trade secret information of EPC, including, but not limited to, information regarding EPC's customers and various projects EPC has completed for these customers

54. Upon information and belief, Defendants have used and/or disclosed the confidential, proprietary and trade secret information of EPC to enable Yates & Yates to lure EPC's customers away from EPC and to Yates & Yates.

55. In the absence of injunctive relief, EPC will suffer irreparable harm, including, but not limited to, loss of customers and clients, loss of consumer confidence, disclosure of customer and client information to a competitive firm, loss of goodwill and business reputation, and unknown economic loss.

56. EPC has no adequate remedy at law.

57. The potential harm to EPC if Defendants are not enjoined is far greater than any harm Defendants may suffer if injunctive relief is not granted.

58. EPC is likely to prevail on the merits of its cause of action against Defendants.

59. The public interest weighs in favor of granting injunctive relief.

## COUNT II
### DEFEND TRADE SECRETS ACT (18 U.S.C. § 1831 *et seq.*)
### (All Defendants)

60. EPC restates and realleges the preceding paragraphs herein.

61. The files and data that Yates forwarded to her personal email address and subsequently disclosed to Yates & Yates, are trade secrets of EPC subject to protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq*.

62. The information contained in these files and data is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use. EPC has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor.

63. The information contained in these files and data is related to products or services used in, or intended for use in, interstate commerce in that EPC conducts business in both Kansas and Missouri.

64. EPC takes and, at all times relevant hereto, has taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include: (a) handbook and IT policies; (b) restricting availability of certain confidential information to key employees; (c) requiring employees to execute agreements with confidentiality provisions and restrictive covenants; (d) physical security measures to protect against the disclosure of sensitive materials to

third parties; (e) and IT security measures, such as password protection for all computers and segregation of certain files so that only employees with a need to access the files can do so.

65. Yates obtained the information contained in these files and data by improper means in violation of her contractual and other obligations to EPC.

66. Yates' foregoing conduct constitutes an actual and threatened misappropriation and misuse of EPC's trade secret information in violation of the DTSA

67. Upon information and belief, and as EPC expects to establish on further investigation and discovery, Defendants improperly acquired, used, and/or disclosed (and continue to use and/or disclose) the confidential business information, customer specific project information, financial information, and project schematics contained in the downloaded files and data Yates took from EPC by improper means.

68. Yates engaged in this conduct despite acquiring this information from EPC under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Yates owed and continue to owe EPC as a former employee of EPC.

69. As a direct and proximate result of Defendants' actual and threatened misappropriation of EPC's trade secrets, EPC has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to Yates.

70. Each of the aforementioned acts of misappropriation was done willfully and maliciously by Defendants, thereby entitling EPC to exemplary damages and its reasonable attorneys' fees.

## COUNT III
### MISAPPROPRIATION OF TRADE SECRETS (K.S.A. 60-3320, *ET SEQ.*)
### (All Defendants)

71. EPC restates and realleges the preceding paragraphs herein.

72. Information on EPC's customers, projects, financial information, and business information constitutes trade secrets, pursuant to K.S.A. 60-320(4), because EPC derives independent economic value from such information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

73. EPC took reasonable precautions under the circumstances to protect its trade secrets, and Yates was subject to obligations to maintain their secrecy.

74. Yates, as an employee of EPC, had access to information that consisted of EPC's trade secrets, including, but not limited to, compilations of EPC's customers with information relating to specific projects, types of services provided and contact information.

75. Yates & Yates knew that Yates had an obligation to maintain the confidentiality of EPC's trade secret information, and that EPC had taken reasonable measures to maintain the confidentiality of this information as evidenced, among other things, by EPC's Confidentiality Agreement with Yates and its internal policies.

76. Defendants willfully and maliciously misappropriated EPC's trade secrets by, among other acts, using and disclosing EPC's trade secrets without authorization (express or implied) at a time they knew or had reason to know that Yates had a duty to EPC to maintain the secrecy and confidentiality of the trade secrets.

77. As a direct and proximate result of Defendants' misappropriation of EPC's trade secrets, EPC has suffered damages.

78. The actions of Defendants were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of EPC.

### COUNT IV
### LANHAM ACT SECTION 43(a)(1)(A), (15 U.S.C. § 1125(A)(1)(A))
### (All Defendants)

79. EPC restates and realleges the preceding paragraphs herein.

80. Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), prohibits any "false or misleading description of fact, or false or misleading representation of fact which… is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection… the approval of goods, services, or commercial activities by another person."

81. The Defendants' false and misleading marketing Brochure as published and disseminated is likely to confuse and/or deceive customers into mistakenly believing that Yates & Yates successfully developed several luxury apartment communities.

82. Defendants' false and misleading representations and statements to customers violate Section 43(a)(1)(A) of the Lanham Act. The false statements include, but are not limited to, Defendants' statements concerning EPC's projects and services and EPC's customers which Defendants held out as belonging to Defendants, as well as Defendants' representation regarding EPC's projects so as to deceive as to the affiliation, connection, or association of Defendants with EPC.

83. Defendants' false and misleading representations and statements have been made in and substantially affected interstate commerce.

84. Defendants' false and misleading representations and statements have been disseminated to the relevant purchasing public.

85. The foregoing acts of Defendants have also caused, or are likely to cause, irreparable injury to EPC's trade, prestige, business reputation and goodwill. Defendants have no adequate remedy at law and, accordingly, EPC is entitled to preliminary and permanent injunctive relief restraining the actions of Defendants pursuant to 15 U.S.C. § 1116.

86. As a direct and proximate result of the foregoing conduct of Defendants, EPC has suffered or will suffer damages in an amount to be proven at trial. In accordance with and pursuant to 15 U.S.C. § 1117, EPC is entitled to recover from Defendants: (a) any profits Defendants have made on sales resulting from their false or misleading statements; (b) three times the damages that EPC may sustain as a result of Defendants' wrongful actions; (c) EPC's costs herein; and (d) EPC's attorneys' fees herein.

## COUNT V
### LANHAM ACT SECTION 43(a)(1)(B), (15 U.S.C. § 1125(a)(1)(B))
**(All Defendants)**

87. EPC restates and realleges the preceding paragraphs herein.

88. Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits any "false or misleading description of fact, or false or misleading representation of fact which… in commercial advertising or promotion, misrepresents the nature, characteristics, qualities...of…goods, services, or commercial activities."

89. Defendants' false and misleading representations and statements to customers in the marketing Brochure violate Section 43(a)(1)(B) of the Lanham Act. The false statements include, but are not limited to, Defendants' statements concerning EPC's projects and services and EPC's customers which Defendants held out as belonging to Defendants, including misrepresenting the nature, characteristics, and qualities of EPC's services and commercial activities.

90. Defendants' false and misleading representations and statements have been made in and substantially affected interstate commerce.

91. Defendants' false and misleading representations and statements have been disseminated to the relevant purchasing public.

92. Defendants' acts complained of herein constitute a use in commerce of a false or misleading description or representation of fact that is likely to cause confusion or mistake.

93. The foregoing acts of Defendants have also caused, and are causing, irreparable injury to EPC's trade, prestige, business reputation and goodwill. Defendants have no adequate remedy at law and, accordingly, EPC is entitled to preliminary and permanent injunctive relief restraining the actions of Defendants pursuant to 15 U.S.C. § 1116.

94. As a direct and proximate result of the foregoing conduct of Defendants, EPC has suffered or will suffer damages in an amount to be proven at trial. In accordance with and pursuant to 15 U.S.C. § 1117, EPC is entitled to recover from Defendants: (a) any profits Defendants have made on sales resulting from their false or misleading statements; (b) three times the damages that EPC may sustain as a result of Defendants' wrongful actions; (c) EPC's costs herein; and (d) EPC's attorneys' fees herein.

## COUNT VI
### BREACH OF CONTRACT
**(Yates)**

95. EPC restates and realleges the preceding paragraphs herein.

96. Yates entered into a valid and enforceable confidentiality agreement containing, among other items, covenants prohibiting her from disclosing EPC's confidential information and from engaging in competition with EPC.

97. Specifically, Yates agreed that she "will not engage as employer, employee, principal, agent, or otherwise, directly or indirectly, at any time in a similar business, and that [she] will not import that knowledge acquired [from EPC] to anybody and that should [she] at any time leave the employ of [EPC she] agrees not to enter into the employ or service or otherwise act in aid of the business of any rival company or concern or individual engaged in the same or in similar lines of business." Exhibit A, Paragraph 1.

98. Upon information and belief, Yates has disclosed confidential information to Yates & Yates and is actively competing against EPC through Yates & Yates.

99. Yates' conduct is in breach of her contractual obligations owed to EPC and has and will continue to cause damage to EPC.

100. EPC is entitled to actual damages, pre- and post-judgment interest, and injunctive relief.

## COUNT VII
### UNJUST ENRICHMENT
### (All Defendants)

101. EPC restates and realleges the preceding paragraphs herein.

102. As a result of their misconduct as alleged in this Verified Complaint, Defendants have been unjustly enriched through the use of EPC's confidential, proprietary and trade secret information by allowing them to avoid the time and expense of developing Yates & Yates's own business processes and, upon information and belief, to facilitate the solicitation of EPC's customers.

103. Defendants' enrichment was at the expense of EPC.

104. Defendants retention of the benefits of using EPC's confidential, proprietary and trade secret information under the circumstances is inequitable and, therefore, Defendants should be required to disgorge their wrongful gains.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff EPC Real Estate Group, LLC, prays for judgment in its favor and against Defendants Yates & Yates, LLC and Denise Yates, and that the Court grant it the following relief:

a. A preliminary and permanent injunction, enjoining and restraining Yates from engaging in business activities, as an owner, employee or in any other capacity, in competition with EPC for a period of one (1) year from the date on which such conduct is first enjoined;

b. A preliminary and permanent injunction ordering Defendants to:

   i. return to EPC all confidential, proprietary and trade secret information belonging to EPC that is within their possession, including product technical information; process flow diagrams and schematics; customer lists, customer preferences and requirements and customer contacts; finished product specifications; bids, contracts, proformas, proposals, pricing information; financial information and other nonpublic business information about EPC its customers and its suppliers (in whatever form such information may exists);

   ii. make available for inspection and imaging any computers, tablets, smartphones, external storage devices, or personal data devices on which Defendants accessed and/or retained EPC's confidential information or trade secrets as well as any and all Cloud-based file management accounts (including Gmail, iCloud, and Dropbox), email accounts, or other devices or accounts on which EPC's information could reside;

   iii. make available for inspection and imaging any computers, tablets, smartphones, personal data devices or email account on which Defendants contacted, attempted to contact or otherwise communicated with any EPC customer for the purpose of soliciting, developing, maintaining or servicing business in competition with EPC;

c. A preliminary injunction, enjoining and restraining Defendants from:

   i. directly or indirectly making use of confidential, proprietary and trade secret information belonging to EPC;

        ii. communicating with any EPC customer for the purpose of soliciting, developing, maintaining or servicing business in connection with EPC; and

        iii. utilizing the Brochure, or any other EPC images, projects, or services, for marketing, commercial promotion or advertising Yates & Yates.

b. A permanent injunction enjoining and restraining Defendants from the conduct set forth in Paragraph (c)(i) above;

c. A permanent injunction enjoining and restraining Defendants from the conduct set forth in Paragraph (c)(ii) above for a period of one (1) year from the date on which such conduct is first enjoined;

d. An award of actual and compensatory damages in an amount to be proven at trial;

e. An award of statutory, exemplary and punitive damages to be proven at trial;

f. Pre-judgment and post-judgment interest;

g. An award of reasonable attorneys' fees and costs incurred in this action; and

h. Such other relief as is just and proper.

### DEMAND FOR JURY TRIAL AND DESIGNATION OF PLACE OF TRIAL

Plaintiff requests a trial by jury in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

        Respectfully submitted,

        */s/ Samantha J. Monsees*
        Melody L. Rayl    KS Bar # 23730
        Samantha J. Monsees    KS Bar # 25936
        **FISHER & PHILLIPS, LLP**
        4900 Main Street, Suite 650
        Kansas City, MO  64112
        Phone: (816) 842-8770
        Facsimile: (816) 842-8767
        Email:  mrayl@fisherphillips.com
        Email: smonsees@fisherphillips.com

        ATTORNEYS FOR PLAINTIFF
        EPC REAL ESTATE GROUP, LLC

## VERIFICATION

State of Kansas )
                      ) ss.
County of Johnson )

Brendon O'Leary, being first duly sworn and of lawful age, states that he is the Executive Vice President for EPC Real Estate Group, LLC, that he believes the allegations in the Verified Complaint to be true and correct.

_____
Signature

Subscribed and sworn to before me this 31 day of August 2021.

_____
Notary Public

My commission expires:

1/27/2022

GINA JOHNSON
My Appointment Expires
January 27, 2022

19