**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **EPC REAL ESTATE GROUP, LLC** ) <br>  ) <br> **Plaintiff,** ) <br>  ) <br> v.  ) <br>  ) <br> **YATES & YATES, LLC and** ) <br> **DENISE YATES,** ) <br>  ) <br> **Defendants.** ) | Case No. 2:21-CV-02383-JWB-JPO |

**STIPULATED ESI PROTOCOL**

The parties in the above-captioned litigation (each of the parties is referred to individually as a "party" and collectively as the "parties"), by and through their undersigned counsel, have proposed this ESI Protocol for the Production of Data ("Protocol"). The parties' stipulation is hereby approved and adopted as the court's order.

Pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure permitting the parties to specify the form or forms in which documents are to be produced, the Protocol sets forth the specifications that shall govern document production during discovery in the above-captioned case (the "Action").

**A.  SCOPE**

**1.**  This Protocol governs the collection and production of electronically-stored information ("ESI") and hard copy documents (collectively, "Data"), which are to be produced electronically in this Action.

**2.**  Nothing herein shall alter the parties' respective responsibility to comply with the applicable Federal Rules of Civil Procedure and any applicable Local Rules regarding the collection or production of Data. To the extent additional obligations, restrictions, or rights not

addressed in this Protocol arise under the Federal Rules of Civil Procedure or other applicable law or rule, that law or rule shall govern.

**3.** The parties incorporate the provisions of the Stipulated Protective Order entered in this case. For the avoidance of doubt, nothing herein shall contradict the parties' rights and obligations with respect to any information designated as Confidential or Highly Confidential pursuant to the Protective Order.

**4.** Nothing in this Protocol establishes any agreement regarding the subject matter or scope of discovery in this Action, or the relevance, authenticity or admissibility of any Data.

**5.** Nothing in this Protocol shall be interpreted to require production of Data protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable protection or privilege.

**6.** Pursuant to the Guidelines for Cases Involving Electronically Stored Information for the U.S. District Court for the District of Kansas, page 5 ¶ 11, the discussion about ESI issues is an ongoing process and not a one-time meeting, and therefore this Protocol may be amended and supplemented.

**B.    SCOPE OF ESI TO BE SEARCHED**

**1.    DEVICES AND ACCOUNTS.** The Parties will include the following devices and accounts in their search for relevant ESI, subject to any conditions contained in other sections of this protocol:

   i.    Any and all external storage devices, cloud storage, hard drives, laptop computers, desktop computers, tablets or any other devices (expressly excluding personal cell phone devices of Defendants or other Yates & Yates employees) utilized by

2

Defendants in creating, accessing or storing ESI on behalf of or in the interest of Denise Yates and/or Yates & Yates LLC; (hereafter, "**Yates Devices**").

ii. The personal and company-issued email accounts utilized by Denise Yates for (i) sending or receiving emails to/from any EPC email account, including the EPC email account(s) previously used by Denise Yates, or (ii) in communicating with any other person on behalf of or in the interest of Yates & Yates LLC (hereafter, "**Yates Email Accounts**"). This includes but is not limited to any such Gmail, Yahoo, Mac Mail or other webmail-based email accounts.

iii. The company-issued email accounts utilized for sending or receiving emails on behalf of or in the interest of EPC, subject to the Search Methodology set forth below with respect to the identification of the specific account custodians to be included (hereafter, "**EPC Email Accounts**"). This includes but is not limited to any such Gmail, Yahoo, Mac Mail or other webmail-based email accounts.

By agreeing to the terms of this Protocol, the parties do not waive any right to withhold a device or account from inspection or search upon asserting an objection to any discovery request seeking inspection or search of such device or account. If a Party asserts an objection to the inspection of a device or account, the Parties will meet and confer regarding the objection. If the Parties are unable to resolve the dispute following meet and confer efforts, the requesting party shall file a motion to compel with the Court in compliance with the Federal Rules of Civil Procedure and the Local Rules of the Court.

**2. INSPECTION OF THE YATES DEVICES**. Inspection of the Yates Devices, if sought during discovery in this case and unless otherwise ordered by the Court pursuant to a motion filed by one or more of the Parties, shall be conducted by way of a multi-step process, with the use of

search parameters to narrow the scope of recovered files submitted to the custodian's counsel for review.

      i.      **Imaging Step:** A third-party forensic examiner as agreed by the parties ("**Inspector**") will create a "mirror" image of all Yates Devices either at its facility or by utilizing a technician identified by the Inspector to create the image at the physical worksite where the device is located. Within 10 days of the imaging of any device, the Inspector will provide a "**Media Log**" to counsel for all parties that contains a description of the device(s) imaged, including: (a) the name of the custodian of the device, (b) the date on which the device was received by the Inspector, (c) the date on which the device was imaged, (d) the name of the manufacturer of the device and its model and serial number if available, and (e) any notes that further describe the device.

      ii.      **Recovery Step:** The Inspector shall recover from the forensic image all available photographs, images, documents, spreadsheets, presentations and other files – including but not limited to those files that were "deleted" – that meet certain search parameters to be determined pursuant to the Search Methodology set forth in this Protocol (hereafter, "**Recovered Files**"). Agreed search parameters will be provided to the Inspector by the Parties as soon as practical and without awaiting resolution by the Court of those search parameters in dispute.

      iii.      **Disclosure Step:** The Inspector shall provide the Producing Party's counsel with a forensic report detailing the Recovered Files ("Disclosure Report"). The Disclosure Report shall contain, to the extent the information is available: (i) the full name of the file including extension; (ii) the file path/directory/folder in which the file is found; (iii) file size; (iv) the file's MD5 Hash; (v) date created; (vi) date modified; (vii) date last accessed,

transferred, edited and/or printed; (viii) author; and (ix) listing of the original folder or directory path.

At the same time, the Inspector shall provide to all Parties any and all logs from the forensic images of the Yates Devices that provide the date, time, duration and medium classification or identification for items plugged into each such device and/or data storage media from or to which data was downloaded, copied, transferred or accessed using the device, to the extent such information is available from the device. These references may include, but are not limited to, flash drives, external drives or other electronic, cloud or storage devices or media.

iv.     **Review and Production Step:**  Defendants shall review the Disclosure Report to determine which, if any, of the Recovered Files should be withheld on grounds of privilege, relevance or some other objection for which Defendants intend to seek a protective order pursuant to Fed. R. Civ. P. 26(c), or if the file path/directory/folder information of a Recovered File should be redacted on the Disclosure Report on grounds of privilege, relevance, or some other objection.  All Recovered Files that Defendants do not intend to withhold on one of the aforementioned bases shall be immediately produced by Defendants to EPC in Native Format by the Inspector with the original file name and all metadata intact to enable the parties to correlate each Recovered File with its description on the Disclosure Report.  EPC may then choose to load the Recovered Files into an eDiscovery review platform for review and analysis at its own expense.

v.     **Recovered Files Withheld:**  As for any Recovered Files withheld from production pursuant to the above paragraph iv, within fourteen (14) calendar days of delivery of the Disclosure Report, counsel for Defendants shall create and provide to EPC's

counsel a withholding log separately listing each such Recovered File (hereafter, "**Withholding Log**"), along with a copy of the full Disclosure Report. Prior to providing the Withholding Log and Disclosure Report to EPC's counsel, Defendants may redact any file name or file path information that, in and of itself, reveals privileged or work product information. EPC shall have the right to challenge the withholding of any document set forth on the Withholding Log within fourteen (14) days of its receipt of the Withholding Log. If Defendants continue to disagree as to whether the file should be produced, the Parties will meet and confer in an attempt to resolve the dispute before raising the issue with the Court.

**C.     INSPECTION OF EMAIL ACCOUNTS**. The Parties agree that inspection of Email Accounts for responsive documents will initially be conducted by the producing Party's counsel using certain search parameters pursuant to the process set forth in the Search Methodology contained in this protocol. Inspection of Email Accounts will be conducted using a full and complete search by counsel of the custodian's email account(s) from the web interface or from an .ost or .pst file if the emails are not fully accessible on the web interface, which shall include, without limitation, all received, sent, deleted, archived, junk, and outbox emails. Responsive documents withheld on the basis of a claimed privilege shall be listed on a privilege log.

**D.     DELIVERY OF DOCUMENT PRODUCTIONS**

1.     Document productions shall be made via portable external storage devices such as hard drives or thumb drives or through secure file transfer protocol ("FTP") or similar secure or encrypted electronic transmission.

2.     Generally, the costs of production pursuant to this Protocol shall be borne by the Producing Party, excepting that EPC has agreed to bear the cost of the forensic imaging, limited

to the process described in Section B.2.i. above, of the Yates Devices. The Producing Party may request and the Court may apportion the costs of electronic discovery in accordance with and only as allowed by the Federal Rules of Civil Procedure. This paragraph is not meant to waive, limit, reduce, or increase the rights and/or obligations of either Party.

**E.     ESI PRODUCTION LOAD FILE FORMAT**

The Parties agree that unless otherwise specified in this ESI Protocol, all ESI will be produced in a Load file prepared in Concordance DAT, with the following specifications:

    a.     The first line of the DAT file must be a header row that identifies the field names;

    b.     The following fields for metadata gleaned from processing of natives should be included (to the extent applicable):

| Field name | Field Description | Email | Edocs |
|---|---|---|---|
| BEGBATES | Starting Bates number | x | x |
| ENDBATES | Ending Bates number | x | x |
| BEGATTACH | Start Bates number of first attachment | x | x |
| ENDATTACH | End Bates number of last attachment | x | x |
| PGCOUNT | Page Count | x | x |
| ATTACHMCOUNT | Number of attachments to an email | x | x |
| DOCDATE | Master date | x | x |
| AUTHOR | File Author | x | x |
| FROM | Email Sender | x | x |
| RECIPIENT | Email Recipient | x | x |
| CC | Carbon Copy Recipients | x | x |
| BCC | Blind Carbon Copy Recipients | x | x |
| DOCTYPE | Document Type (eg; Word, PowerPoint) | x | x |
| TITLE | Document Title | x | x |
| SUBJECT | Email Subject | x | x |
| DOC DATECRTD | Document Date Created | x | x |
| DOC TIMECRTD | Document Time Created | x | x |
| DOC DATEMOD | Document Date Last Modified | x | x |
| DOC TIMEMOD | Document Time Modified | x | x |
| DATERCVD | Date Received | x | x |
| TIMERCVD | Received Time | x | x |

7

| Field name | Field Description | Email | Edocs |
|---|---|---|---|
| DATESENT | Sent Date | x | x |
| TIMESENT | Sent Time | x | x |
| FS DATECRTD | File System Date Created | | x |
| FS TIMECRTD | File System Time Created | | x |
| FS DATELASTWRITTEN | File System Last Written Date | | x |
| FS TIMELASTWRITTEN | File System Last Written Time | | x |
| FS ENTRYMODDATE | File System Entry Modified Date (For Windows) | | x |
| FS ENTRYMODTIME | File System Entry Modified time (For Windows) | | x |
| FS DATEADDED | File System Date Added (for MAC O/S) | | x |
| FS TIMEADDED | File System Time Added (for MAC O/S) | | x |
| FS DATELASTACCESS | File System Last Access Date | | x |
| FS TIMELASTACCESS | File System Last Access Time | | x |
| CUSTODIAN | Custodian(s)/Source(s) | x | x |
| DUPLICATE CUSTODIAN | Duplicate Custodian | x | x |
| FILESIZE | File Size | x | x |
| FILENAME | File name - name of file as it appeared in its original location | x | x |
| FILEEXTENSION | Extension for the file (*e.g.* *.doc; *.pdf; *.wpd) | x | x |
| FILEPATH | Data's original source full folder path | x | x |
| HASH | Hash value (used for deduplication or other processing) | x | x |
| NATIVELINK | File path for Natives produced | x | x |
| TEXT LINK | File path for Text files produced | x | x |

a. The load file must include an Image Reference/OPT cross-reference file that links images to records in the database in OPT format.

## F. PRODUCTION FORMAT OF SPECIFIC FILE TYPES

### 1. IMAGE FILE FORMAT

Except for the types of documents identified in Section B.2.iv. above and Section F.2.-3. below, a Producing Party will convert ESI from its native file format ("Native File") to an image file for production, subject to the following specifications:

a. Group IV, 300 DPI, single-page TIFF images shall be provided for each page of each document, with each image file named after the production number of that page with the extension "tif." File names cannot contain spaces.

b. To the extent reasonably possible, the imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks and original document orientation (i.e. portrait to portrait and landscape to landscape). If an image contains color, it must be produced in color.

c. Word processing documents will be processed to TIFF format and imaged showing track changes or edits, comments, notes and other similar information.

d. Text files shall be produced as one file per document, named after the starting production number assigned to the document and ending with extension ".txt", with a text directory for each production volume, and with a relative file path to the text file provided in the related database load file. OCR text files must be named by beginning Bates number; and the relative path to the text file must be included in the OCRPATH field of the DAT file.

e. The parties agree to meet and confer over the inclusion or exclusion of embedded files from the production. To the extent a document is not already unitized, the parties shall undertake reasonable efforts, if a document consists of more than one page, to unitize the document and any attachment(s) as in their original form when creating the image files. The parties shall also undertake reasonable efforts to ensure that distinct documents are not merged into a single record and that single documents are not split into multiple records.

f. Electronic documents attached to an email or electronic and hard-copy documents attached or appended to a hard-copy document, are to be produced contemporaneously and sequentially immediately after the parent document. Non-relevant attachments may be excluded from production, but non-relevant parent documents with relevant attachments must be produced. All non-relevant attachments excluded from production, with the exception of signature block image files with no substantive content, should be produced as a slip sheet or

placeholder with file name information provided on the face of the slip sheet and in the accompanying metadata. Parent-child relationships within a document family (the association between an attachment and its parent document) shall be preserved. A document and all other documents in its attachment range constitutes a family group. Each document shall be produced with the bates number for the first and last page of that document in the "BegDoc" and "EndDoc" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the bates number for the first and last page in the document family.

    g.  Each of the metadata and coding fields set forth in Paragraph E that reasonably can be extracted from an electronic document shall be produced for that document. Fields that are not populated shall be left with null values and not populated with fillers or spaces. All metadata pertaining to dates and times will be standardized to Coordinated Universal Time (UTC).

    h.  Bates numbers shall be branded to the lower right-hand corner of TIFF images and confidentiality designations (if applicable) shall be electronically branded or burned to the lower left-hand corner of TIFF images so that they legibly print with the images. If one or more bates numbers is skipped in a production, the Producing Party will so note in a cover letter accompanying the production or in a privilege log. The parties shall use reasonable efforts to ensure that bates numbers: (1) are unique and consistent across the entire production, provided, however, that parties may use multiple prefixes to reflect productions from separate entities or related to specific experts; (2) maintain a constant prefix and page length across the production, consistent with the requirements of sub-paragraph (1); (3) contain a prefix that clearly identifies the Producing Party; (4) contain no special characters or embedded spaces; and (5) are sequential

within a given document. Attachments will immediately follow the bates number(s) for the parent document.

            i.        Where TIFF images of certain electronic documents are not readable, the parties may produce such documents in native format. Where TIFF images of certain hard copy documents are not readable, the parties will meet and confer regarding the volume and best method of production prior to producing paper documents in hard copy format. To the extent the Receiving Party obtains through discovery a file or document that the party believes is not adequately represented in TIFF image format, the Receiving Party may request that the file or document be produced in native format by identifying the document by bates number, the production of which shall not unreasonably be withheld.

      **2.**      **NON-CONVERTIBLE FILES**

Certain types of files such as system, program, proprietary files, audio files, and video files may not be amenable to conversion into TIFF format. Such files will not be converted into TIFF format. To the extent that the parties have not excluded these files from production elsewhere in this Protocol, and to the extent such files contain responsive non-privileged information, these files will be produced in their native format in accordance with Paragraph F.3. below.

      **3.**      **NATIVE FILES**

Producing Party will produce certain types of ESI in their native format, subject to the following specifications:

            i.        Spreadsheets (including Microsoft Excel Spreadsheets), presentation files (including Microsoft PowerPoint and other electronic slide programs), media files (audio, video, etc.) and proprietary files that cannot be opened with common office software (engineering/CAD files, databases, etc.), shall be produced in native format.   With the exception of those Recovered

11

Files produced pursuant to Section B.2.iv., a NATIVELINK field must be included in the DAT load file to provide a relative path to the native file on the produced storage media and an OCRPATH field must be included to provide a relative path to the extracted text files on the produced storage media.

        ii.      Producing Party will honor reasonable requests for native files for other types of documents. The Native File shall be renamed in the following format: Bates Prefix-Bates Number. Except as otherwise specified in this Protocol, each of the metadata and coding fields set forth in Paragraph E that reasonably can be extracted from an electronic document shall be produced for that document. Fields that are not populated shall be left with nullvalues and not populated with fillers or spaces.

        iii.      Where native files are produced in lieu of TIFF images, with the exception of Recovered Files produced in accordance with Section B.2.iv., each native file will be assigned a unique bates number. The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in native format; provided that, in lieu of producing a placeholder, a Producing Party may, in its sole discretion, produce TIFF or JPEG images of PowerPoint or other presentation files in addition to producing native files. The placeholder will be branded with the bates number in the lower right-hand corner, the original filename of the native file, and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

        iv.      To the extent that any file identified for production in native format contains information subject to a claim of privilege or any other applicable protection that requires redaction, the Producing Party shall convert that file to TIFF format and produce it with the

necessary redactions. The portion of the redacted text shall be clearly identified on the face of the TIFF image, either by masking the redacted content with electronic highlighting in black or through the use of redaction boxes. The label "Redacted" shall appear on the face of the redacted portion of the TIFF image. Redactions for privilege, work product, and Protected Data, including whether such redactions must be included on a log, are discussed in more detail in Paragraph J below. The redacted TIFF image shall be produced in accordance with the provisions for the production of TIFF images contained herein. Redacted text shall not be included in the text file for that redacted TIFF image. The original unredacted Native File shall be preserved pending conclusion of the Action. For spreadsheet files, and for other files where such conversion is unduly burdensome or renders the document unusable, the parties will meet and confer regarding how the Producing Party may produce the document in a reasonably usable form to be agreed upon by the respective parties.

    v.  The parties will make reasonable efforts to remove passwords or other security protection from any Native File prior to production. If the security protection cannot be removed from a Native File after reasonable efforts by the Producing Party, a placeholder TIFF image may be produced in place of the Native File indicating that security protection could not be removed from the Data. Upon request from the Requesting Party, the parties shall meet and confer in good faith regarding the reasonable efforts or mechanisms made to remove the security protection from the Native File and/or the production of the available metadata listed in Paragraph C from the file.

    vi.  If a Native File is used at a deposition or hearing in this Action, or attached to a motion or other filing, it shall be accompanied by its production number-stamped placeholder TIFF image in order to facilitate tracking and authentication thereof. The parties

may, but are not required to, further mark fixed images of Native Files with additional numbering for ease of identification at a deposition or hearing.

## G. SEARCH METHODOLOGY

To the extent the Parties wish to use keywords, dates, custodians or other search parameters ("Search Terms") with respect to the review and production of ESI, the following procedure shall be followed:

      i.      The Requesting Party may include Search Terms within any request for production of documents to be used to identify responsive ESI either generally or with respect to a specific request. To the extent the Producing Party objects to the Search Terms specified in the request, the Producing Party will set forth in their written response to each request any such objection, whether Search Terms were used, and if so, which Search Terms were used.

      ii.      In the event a request for production of documents does not include any Search Terms, the Producing Party will set forth in their written response to each request whether Search Terms were used, and if so, which Search Terms were used.

      iii.      If the Requesting Party objects to the Search Terms identified by the Producing Party, the Requesting Party shall, within 15 business days of service of the Producing Party's written responses, propose alternative Search Terms and/or meet and confer with the Producing Party to negotiate alternative Search Terms.

      iv.      Any Search Terms that produce an unreasonable amount of Search Hits to review will be modified to appropriately limit the amount of Search Hits so that the burden or expense of the proposed discovery does not outweigh its likely benefit. Likewise, Search Terms that produce an unreasonable number of false positives will be modified to appropriately limit the number of Search Hits so that the burden or expense of the proposed discovery does not outweigh

its likely benefit.

   v. In the event the Parties are unable to resolve a dispute concerning appropriate Search Terms following meet and confer efforts, the Requesting Party shall file a motion to compel with the Court in compliance with the Federal Rules of Civil Procedure and the Local Rules of the Court.  The Parties acknowledge and agree that additional Search Terms may be proposed and or utilized as discovery proceeds in the case and shall be subject to the procedures set forth herein.

   vi. Nothing in this Protocol shall prevent any Party from conducting a manual review of documents for responsiveness, privilege, and confidentiality after application of ESI Search Terms.

**H. PRODUCTION OF DATA FROM DATABASES AND OTHER FORMATS**

  **1.** If a Producing Party identifies a particular source or type of responsive Data for which it reasonably believes that application of this Protocol would be unduly burdensome or impractical, the party identifying the source or type of responsive Data shall promptly notify the Requesting Party, explaining in detail the type and source of the Data at issue, and the reason(s) why the party believes that application of this Protocol would be unduly burdensome or impractical, and proposing reasonable modifications of this Protocol with respect to that source or type of responsive Data. Thereafter, the parties shall meet and confer within 14 calendar days to determine if modification of the Protocol with respect to the Data at issue is appropriate, and f an agreement is not reached, the Producing Party bears the burden of seeking relief from the Court from the requirements of this Protocol.

  **2.** Nothing in this Protocol requires a party to use unreasonably burdensome or expensive data recovery processes, or to search for information, documents, or other materials in

locations where responsive information is not likely to be found and/or is not reasonably accessible, absent a showing of good cause, beyond what is required under Federal Rule of Civil Procedure 26(b). To the extent a party believes that responsive data is likely to be foundon data sources that are not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B), the party shall identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing, and, to the extent possible, provide enough detail to enable the Requesting Party to evaluate the burdens and costs ofproviding the discovery and the likelihood of finding responsive information on the identified sources.

### I.     HARD COPY DOCUMENT PRODUCTION FORMAT

The parties agree that, with respect to documents that exist in hard-copy format ("Hard-Copy Materials"), a Producing Party will image and produce such documents as TIFF images or scan and produce such documents as PDF files. Where paper scanned images have identification spine**s**, file folder labels, "post-it notes," or any other labels, the information on the label shall be scanned and produced to the extent practicable. In addition, folder labels, box labels, or binder labels (including spines), or other similar top-level identifiers, to the extent practicable, shall be imaged or scanned and produced contemporaneous with the applicable documents.

### J.     PRIVILEGE LOGS

**1.**     To the extent that a document is withheld from production on the basis of the attorney client privilege or the work product doctrine, the producing Party shall produce a rolling privilege log of withheld documents within a reasonable period after the document was withheld from the rolling production. The privilege log shall contain sufficient information from which the Requesting Party can determine the applicability and validity of the assertion of

privilege. At a minimum, the privilege log shall contain the following: (a) a description of the document including its general subject matter and form; (b) date of creation; (c) author or creator; (d) actual or intended recipient(s); (e) current location and (e) the grounds for asserting privilege or otherwise refusing to produce the document.

**2.** The parties shall not redact any document based upon any objection related to the relevance or non-responsiveness of a document, except that the parties shall meet and confer regarding redactions of competitively sensitive information related to products not relevant tothis litigation. If the parties are unable to reach an agreement on redactions of competitively sensitive information related to products not relevant to this litigation, they must seek further relief from the Court pursuant to Federal Rule of Civil Procedure 26(c) and District of Kansas Local Rules 37.1 and 37.2. Partially privileged documents need not be logged so long as the reason for the redaction is provided on the document (e.g. "Redacted: Attorney-Client Privilege"). Upon reasonable request, the Producing Party agrees to provide additional information supporting the claim of privilege if it is not clear from the face of the redacted document.

**3.** Documents comprising attorney-client communications and/or attorney work product dated after April 27, 2021 (the date of the first communication between counsel for the parties).

**K.    OBJECTIONS PRESERVED**

Nothing in this Protocol shall be interpreted to require disclosure of relevant information or Data that is protected by the attorney-client privilege, common interest privilege, work-product doctrine, or is prohibited from disclosure under any similar law, regulation, rule, court order, or any other applicable privilege or protection. The parties do not waive any

17

objections to the production, discoverability, or confidentiality of ESI, Hard-Copy Materials or any other discovery materials, including, without limitation, objections regarding the burden, overbreadth or relevance of document requests related to ESI, Hard-Copy Materials or any other discovery materials, or relating to the production of ESI or Hard-Copy Materials in a form specified in this Protocol.

## L.      **RESOLUTION OF DISPUTES**

**1.** The parties agree to meet and confer in good faith regarding matters related to the production of Data not specifically set forth in this Protocol, related to the interpretation of this Protocol or related to the parties' obligations thereunder. The parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Protocol. If a Producing Party cannot comply with any material aspect of this Protocol, such party shall inform the Requesting Party in writing at or before the time of production as to why compliance with the Protocol is unreasonable or not possible.

**2.** If the parties are unable to reach resolution regarding any dispute concerning the interpretation of this Protocol or compliance with same, such disputes may be presented for judicial resolution. No party may seek judicial relief concerning this Protocol unless it first has conferred with the applicable Producing or Requesting Party.

**IT IS SO ORDERED.**

Dated this 23rd day of December 2021.        James P. O'Hara
                                             James P. O'Hara
                                             United States Magistrate Judge

**APPROVED AS TO FORM AND CONTENT:**

| FISHER & PHILLIPS LLP | RAHM, RAHM & McVAY, P.C. |
|---|---|
|  | /s/ Cristina Olson |
| */s/ Samantha J. Monsees* | Cristina Olson #79005 |
| Melody L. Rayl, KS No. 23730 | 511 Foster Lane |
| Laura Bailey Brown, D. Kan. No. 78908 | Warrensburg, MO 64093 |
| Samantha J. Monsees, KS No. 25936 | (330) 322-3917 |
| FISHER & PHILLIPS LLP | cristina@rahmlaw.com |
| 4900 Main Street, Suite 650 |  |
| Kansas City, MO 64112 | BROUS LAW LLC |
| Tel: (816) 842-8770 | Carrie M. Brous, KS No. 18157 |
| Fax: (816) 842-8767 | 3965 W. 83rd Street, Suite 115 |
| Email:  mrayl@fisherphillips.com | Prairie Village, KS 66208 |
| Email:  lkbrown@fisherphillips.com | Phone: (913) 209-8596 |
| Email:  smonsees@fisherphillips.com | Email: cbrous@brouslaw.com |
| *ATTORNEYS FOR PLAINTIFF* | *ATTORNEYS FOR DEFENDANTS* |

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on this 23rd day of December 2021, the foregoing document was filed electronically using the Court's CM/ECF system, which served notice to all counsel of record in this matter:

              */s/ Samantha J. Monsees*